UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>RALEIGH RANA FIGUERAS,<br><br>Movant. | No. 2:16-cr-0045-MCE-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Introduction

Pending before the court is Raleigh Rana Figueras's (hereinafter "movant") amended motion to vacate, set aside, or correct his sentence pursuant to section 2255 (ECF No. 118), which the government has opposed (ECF No. 126). The court held an evidentiary hearing on the motion on September 29 and 30, 2020. Movant was represented by Attorney Erin Radekin. The government was represented by Assistant U.S. Attorney Michelle Rodriguez. After considering the pleadings, the testimony of the witnesses and exhibits presented at the hearing, and the arguments advanced by counsel at the hearing, the court concludes that movant's motion should be granted.

Also pending is the government's motion to strike a declaration submitted by Frederick Williams on behalf of the movant. ECF No. 135. For the reasons described below, that motion is denied.

/////

1

Movant's Section 2255 Motion

A.  Background

Movant was charged with: (1) seven counts of bank fraud and attempted bank fraud pursuant to 18 U.S.C. § 1344; (2) one count of aggravated identity theft pursuant to 18 U.S.C. § 1028(a)(1); (3) one count of unlawful possession of five or more identification documents pursuant to 18 U.S.C. § 1028(a)(3); and (4) one count of possession of stolen U.S. mail pursuant to 18 U.S.C. § 1708. ECF No. 21. He accepted a plea agreement that dismissed all but one of the bank fraud counts. ECF Nos. 75 & 91. The plea agreement required him to plead guilty to four counts: (1) one count of bank fraud and attempted bank fraud; (2) one count of aggravated identity theft; (3) one count of possession of stolen mail; and (4) one count of unlawful possession of five or more identification documents. He was sentenced to three concurrent twelve-month sentences for the counts of bank fraud, possession of stolen mail, and possession of identification documents. ECF No. 90. He was sentenced to a consecutive twenty-four month sentence for the count of aggravated identity theft. *Id.* This motion centers on the plea of guilty to a single Count (Count 10) of possession of stolen mail in violation of 18 U.S.C. § 1708, and, in particular, the immigration consequences of receiving a sentence of 12 months as to the Count.

Movant is not a United States citizen and was advised, both in the plea agreement and at sentencing, that his plea could result in his removal from the country. But, significantly, he was not advised that if he accepted the plea agreement as to count 10 and received a sentence of 12 months or more, it would constitute an aggravated felony and render him without a defense to his deportation.

On November 2, 2018, and while movant was serving his prison sentence, he was contacted by immigration officials and told that he would be deported because his conviction for possession of stolen mail was an aggravated felony that precluded any possible defense to removal. ECF No. 118 at 17. After being so apprised, movant prepared a section 2255 motion with the assistance of another inmate — Frederick Williams. ECF No. 111-1 at 15 ¶ 6. He asserts that he signed the motion, dated it, and turned it over to Williams for mailing. *Id.* The motion does bear a date — November 5, 2018 — consistent with those allegations. *See* ECF No.

96 at 12. For reasons that are unclear, the court did not receive that copy of the motion. It received only a second copy that movant himself placed in the prison mail system in June of 2019. ECF No. 118 at 17-18. As discussed below, the government contests the timeliness of movant's section 2255 motion and therefore the court's jurisdiction to address it.

Movant now argues that: (1) his motion is timely and should be considered; and (2) that his defense counsel rendered ineffective assistance by failing to advise him that a sentence of one year or more on the count for possession of stolen mail would result in an aggravated felony conviction.

B.  Legal Standards

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *Davis v. United States*, 417 U.S. 333, 344-45 (1974); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346. *See also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

C.  Timeliness of Figueras's Motion

A section 2255 motion must be filed at the "latest of": (1) one year of the movant's judgment becoming final, § 2255(f)(1); (2) one year of when the Supreme Court initially recognized a new right made retroactively applicable to cases on retroactive review, §2255(f)(3); (3) one year of his discovery of the facts supporting the movant's claims, § 2255(f)(4); or (4) the

date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  Section 2255(f)(1)-(4).  Here, the parties appear to agree that the judgment against movant was final on November 21, 2017 — 14 days after judgment was entered in this case and at the expiration of time for filing of a notice of direct appeal.  *See* ECF No. 118 at 10; ECF No. 126 at 2.  As noted *supra*, the court did not receive movant's initial pro se section 2255 motion until July 8, 2019 — well over a year after his judgment became final.  *See* ECF No. 96.  The question, then, is whether: (1) some later start date is applicable or (2) the prison mail box rule renders his late filing timely.

### 1. Later Applicable Start Date

Movant argues that he is entitled to a later start date for the one-year limitations period insofar as he did not know that his aggravated felony conviction had deprived him of removal defenses until November 2, 2018 — the day immigration officials informed him that he had been convicted of an aggravated felony and would be removed.  ECF No. 118 at 12.  Movant has submitted a declaration from Jerome Price, the counsel who represented him at the time he negotiated and accepted the plea at issue.  Price states that:

> I recall having conversations with Mr. Figueras during which I advised him that because the total loss on any count involving fraud was less than $10,000, conviction of those counts would not be aggravated felonies per 8 U.S.C. § 1101(a)(43)(M)(i).  I knew that a conviction of an aggravated felony could result in adverse immigration consequences for a noncitizen such as Mr. Figueras.  I did not advise Mr. Figueras, however, that Count 10 was technically a "theft offense" under 8 U.S.C. § 1101(a)(43)(G) – meaning a conviction on Count 10 would constitute an aggravated felony only if the sentence was one year or more – and that the loss amount was irrelevant for purposes of classifying the conviction as an aggravated felony under immigration law.

ECF No. 111-1 at 3, ¶ 4 (Ex. A, Declaration of Jerome Price).  Under movant's theory, he is entitled to a later start date in November 2018 because that is when he discovered that his conviction on Count 10 was an aggravated felony for the purposes of immigration law.

The government argues this later start date does not apply because the discovery movant made in November of 2018 was legal rather than factual.  ECF No. 126 at 4-5.  In *Ford v. Gonzalez*, the U.S. Court of Appeals for the Ninth Circuit held that "[t]he 'due diligence' clock

starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered." 683 F.3d 1230, 1235 (9th Cir. 2012). Under the government's theory, the "vital fact" was the existence of the conviction on Count 10 itself, which was known to the movant at the time judgment was entered. It was the legal significance of that conviction — that it was an aggravated felony because the corresponding sentence was twelve months — that he discovered at a later date. The standard is an objective rather than a subjective one. The Seventh Circuit has explained:

> Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If § 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit . . . .

*Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).

At the evidentiary hearing, movant's counsel argued that the discovery at issue was both legal and factual – the factual element being the discovery that Price had misadvised movant as to the nature and potential risks associated with Count 10. This argument presents a close question insofar as it is difficult to separate the "fact" of Price's misadvisement from the legal discovery associated therewith. However, the court need not decide the question because, as explained below, movant's motion was timely under the prison mail box rule.

### 2. Prison Mailbox Rule and Frederick Williams's Declaration

Movant argues that, under the prison mailbox rule, his motion was timely filed on November 5, 2018 — the date he signed his motion and gave it to Williams — the inmate who was assisting him. ECF No. 118 at 10-11. Movant testified at the hearing and described William as acting as a jail-house lawyer with whom he would consult at the prison library. When movant learned that he was to be deported he went to see Williams who advised him to file a section 2255 motion. Movant testified that Williams helped draft the motion and upon completion assured movant that he (Williams) would deposit the motion in the outgoing prison mail. *Id.*, ECF No. 111-1 at 15-16, ¶ 6 (Ex. C, Declaration of Figueras). Under the prison mail box rule, a prisoner's legal filing "is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of the court." *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).

1   And, as movant correctly notes, the fact that the delivery to prison officials was performed by

2   another inmate does not alter the mailbox rule analysis.[1]  *See Hernandez v. Spearman*, 764 F.3d

3   1071, 1074 (9th Cir. 2014) ("Application of the rule has never turned on the identity of the

4   prisoner who physically delivers the petition to prison authorities.  After examining the

5   precedential underpinnings of the mailbox rules, we conclude that there is no reason it should.").

6       After the hearing in this matter was concluded, the court invited movant to submit a

7   declaration from Williams who, prior to these proceedings, had been deported to Belize.  ECF

8   No. 131.  On October 20, 2020, movant submitted the declaration.  ECF No. 134-1.  Williams's

9   declaration corroborated movant's testimony as to the mailing of his initial section 2255 motion.

10  *Id.*  Then, the government moved to strike Williams's declaration, arguing that: (1) the

11  declaration bore no indicia of reliability or credibility — there was no certification or notary

12  indicating that it was actually authored by Frederick Williams; and (2) even if it was authored by

13  Williams, the court should afford it no weight because he was convicted of fraud and false

14  statements.  ECF No. 135 at 1-2.  In conjunction with its motion, the government submitted a

15  lengthy appendix of documents which purport to show that Williams previously attempted to

16  deceive a federal court as to the timeliness of his own section 2255 motion.  ECF No. 136.

17      As to the reliability of the declaration, the court notes that Williams signed under penalty

18  of perjury.  ECF No. 134-1 at 3.  Thus, it complies with the requirements of 28 U.S.C. § 1746[2]

---

[1] The government argues that movant is not entitled to the mailbox rule insofar as he delivered his motion to another inmate rather than prison authorities.  ECF No. 126 at 6.  But so long as the other inmate delivered the motion into the hands of prison authorities, that is sufficient.

[2] Section 1746 states, in pertinent part:

> Wherever, under any law of the United States or under any rule . . . order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

6

1  and is deemed admissible on that basis.  The remainder of the government's arguments regarding
2  Williams's propensity for fraud go to the credibility of the declaration rather than its
3  admissibility.  Thus, the motion to strike the declaration is denied.

4       Movant credibly described in his testimony seeking advice from Williams upon learning
5  of the impending deportation proceeding and the extent to which Williams assisted him.  He
6  described meeting with Williams at an office at the library and that Williams advised him on how
7  to pursue a section 2255 motion.  He described Williams helping him draft the motion and, upon
8  signing it, leaving a copy with Williams to mail.  He also described William's advice to wait
9  when movant became concerned that he had not heard anything in response from the court.
10 Additionally, no witness or documentary evidence was presented by the government to refute
11 movant's testimony regarding his interactions with Williams or the mailing of the motion in
12 November of 2018.

13      And movant's testimony is bolstered by Williams's declaration.  As noted above, the
14 declaration corroborates what movant testified to at the motion hearing.  So too does the United
15 States Department of Homeland Security "Notice to Appear" — dated November 2, 2018 —
16 which movant attached to his reply to the motion to strike.  ECF No. 137-1 (Ex. A).  By all
17 accounts, movant was, at all times, desperate to avoid removal.  Thus, it is credible that,
18 immediately after receiving this immigration notice, he looked to the most readily available legal
19 resource — a well known "jailhouse lawyer."  Less persuasive is the notion that an individual
20 who feared removal would, upon receiving a notice that the government intended to remove him,
21 delay filing a section 2255 motion for months.

22      The government argues that movant's account of the initial mailing is questionable —
23 going so far as to suggest, at the evidentiary hearing, that movant may have forged the November
24 2018 date on his pro se motion.  Counsel for the government emphasized that movant had not

---

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

7

presented any log establishing that the document was mailed in November 2018, nor had he testified that there was any other observable "paper-trail" — such as the exchanging of postage or money. But absent evidence to the contrary — and not mere speculation on the part of the government — the court presumes the filing was delivered to prison authorities on the date it was signed. *See Butler v. Long*, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) ("Butler signed the first petition on October 5, 2008, and it was stamped filed on October 15, 2008. We assume that Butler turned his petition over to prison authorities on the same day he signed it and apply the mailbox rule."). The court notes that avenues for challenging this presumption were available to the government. It could, for instance, have sought and presented documentary evidence which showed that no mailings in movant's (or Williams's) name were submitted during the time period in question. Better still, it might have called a prison official to testify as to how the prison mail system worked at Taft Correctional Institution and how, if at all, movant's testimony was inconsistent with that functioning. It failed to present such evidence, however. Instead, it challenges movant's testimony and Williams's declaration by arguing that both men have a history of perpetrating fraud. That history has some obvious bearing on credibility, but it is not the final word. Most convicted criminals have sordid deeds in their past which, in the eyes of most, render them less credible. The court declines to dismiss their testimony out of hand, however, particularly with respect to alleged violations of their constitutional rights. Instead, it finds, based on the entirety of the record, that movant's testimony regarding the timing of his initial motion is credible. *See* 28 U.S.C. § 2255(b) (" Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and *make findings of fact and conclusions of law with respect thereto*.") (emphasis added).

Finally, the court turns to the question of diligence. The Ninth Circuit has held that "[a] prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time." *See Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001). The

government argues that petitioner failed to act diligently insofar as he did not send a letter to the court or otherwise investigate the status of the motion he initially sent. The court disagrees.

As noted *supra*, the initial motion was purportedly mailed in November of 2018 and never reached the court. Movant testified that he became concerned after two or three months had passed and he received no response from the court. Williams, however, advised him that it takes time to receive a response to such a motion and that he should wait. It was not until June of 2019 – nearly six months later – that movant sent another copy of his motion to the court. ECF No. 111-1 at 16, ¶¶ 7-8. But the passage of approximately six months between the mailing of the initial motion and movant's follow-up does not render him non-compliant with the diligence requirement. In *Huizar*, the Ninth Circuit held that a prisoner waiting twenty-one months for a court's decision on his filing (which was, like the case at bar, missing in transit) was acceptably diligent. 273 F.3d at 1224.

Based on the foregoing, the court concludes that the prison mailbox rule applies and the motion is timely filed.

      D.      <u>Ineffective Assistance of Counsel</u>

Turning to the merits, the question is whether movant's defense counsel, Jerome Price, rendered ineffective assistance of counsel when he failed to recognize (and relate to movant) that a conviction on Count 10 (possession of stolen mail) would be an aggravated felony if it resulted in a sentence of a year or more. The issue is material to movant's current circumstances in which he faces an order for his removal from the United States. Upon being sentenced to twelve months on Count 10, movant was left without any viable defense to immigration removal. Price's lack of awareness prevented him from negotiating with the government a recommended sentence of just under 12 months or requesting such a sentence from Judge England during the sentencing hearing. Movant claims that Price's error: (1) violated his right to effective assistance of counsel under the Sixth Amendment based on the misadvisement and the failure to negotiate/request a better plea/sentence; (2) violated his right to due process under the Fifth Amendment because his plea was not knowing and voluntary; and (3) violated his right a fair sentencing process under the Fifth Amendment. ECF No. 127 at 1-2.

As discussed below, the court finds that Price's misadvisement and subsequent failure either during negotiations or at the sentencing hearing to seek a sentence of one day less than the 12 months to which movant was sentenced as to Count 10, violated movant's Sixth Amendment right to effective assistance of counsel.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To sustain an ineffective assistance of counsel claim, a movant must prove that counsel's representation was deficient, falling below an objective standard of reasonableness. Meeting this requirement demands that the movant overcome the strong presumption that counsel's conduct fell within "the wide range of professionally competent assistance." *Id.* at 690. Second, defendant must show that counsel's deficient performance prejudiced the defense. *Id.* To prove prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Relevant here, the Supreme Court held in *Padilla v. Kentucky,* 559 U.S. 356 (2010) that effective assistance requires a defense attorney to inform a client of "clear" deportation consequences which arise wherever immigration law is "succinct, clear, and explicit." *Id.* at 368-69. *See also United States v. Rodriguez-Vega*, 797 F.3d 781, 786-791 (9th Cir. 2015) ("Counsel's statement at Rodriguez-Vega's sentencing hearing that 'there is a high likelihood that she'll still be deported. It's still probably considered an aggravated felony for purposes of immigration law'. . . , is similarly deficient because it likewise fails to state accurately the plain and clear status of the law.").

Attorney Price testified and candidly explained that he simply missed a critical issue as to Count 10 and its immigration consequences to movant. Price's testimony was detailed and forthcoming and the court finds it credible. Price explained that like the other Counts included in the plea agreement, his focus as to Count 10 was not on whether the sentence might exceed 12 months, but whether the amount of loss would reach $10,000. Price mistakenly believed that a plea of guilty to Count 10 (like the other Counts to which movant would plead guilty) would not

1  result in a conviction for an aggravated felony so long as the amount of loss was less than
2  $10,000.  Price overlooked, however, that Count 10 was a theft offense for immigration law
3  purposes and, therefore, an imposition of a sentence of 12 months or more would result in a
4  conviction for an aggravated felony regardless of loss amount.  As a consequence of Price's
5  oversight, movant's deportation became a certainty when Judge England sentence him to 12
6  months.  Price admitted that he failed recognize this and did not properly advise movant of the
7  legal implications surrounding Count 10.  ECF No. 111-1 at 2-3.
8         To be sure, Price did advise movant that there were possible adverse immigration
9  consequences and that, in pleading guilty, he would be "deportable."  *Id.* at 2.  But both Price and
10 movant confirmed that Price did not advise movant that, if he were sentenced to 12 months or
11 more on Count 10, he would be pleading to an aggravated felony and effectively guarantee his
12 deportation.  It is well established in this circuit that effective assistance requires that a defendant
13 be so informed during the plea negotiations.  *See United States v. Bonilla*, 637 F.3d 980, 984 (9th
14 Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more
15 than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a
16 virtual certainty.").  Thus, without knowing that he would need to seek a sentence on Count 10
17 that was merely one day less than was imposed, movant did not have the opportunity at
18 sentencing to explain these circumstances and the equity of a slightly shorter sentence.  Such a
19 reduction was not at all implausible.  As movant argues, he could still have been sentenced to the
20 identical overall amount of time simply by removing one day from the sentence on Count 10 and
21 adding one day to the sentence on any of the other counts.  Had such a request at the sentencing
22 hearing been presented and granted by the sentencing judge it would have maintained the overall
23 sentence length and preserved any available defenses to deportation.  But, because Price and
24 movant did not understand the consequences of that single day and mistakenly believed that a
25 conviction on Count 10 would not result in an aggravated felony, movant accepted the plea.  He
26 did so knowing that he *could* be deported after consideration of his immigration defenses in a
27 removal proceeding, but not knowing that, with a sentence of 12 months on Count 10, he *would*
28 be deported without any such consideration.  In short, there is a fundamental difference in

knowing a removal is possible as opposed to knowing it is a virtual certainty. That distinction has, as noted by the case law cited *supra*, been clearly drawn in this circuit. Knowledge of that risk might well have motivated movant to alter his plea negotiation strategy or to request a sentence just under one year at sentencing; or, at the extreme end, to reject a plea entirely and proceed to trial. In any event, under the law in this circuit Price's performance in advising movant was constitutionally ineffective. *United States v. Bonilla*, 637 F.3d at 984.

The government argues that it was enough, under *Padilla*, for Price to advise movant that he could be deported. ECF No. 126 at 10 ("[T]he Supreme Court in *Padilla* requires that a criminal defense attorney, such as Price, 'need do no more' than advise a noncitizen, such as Figueras, that pending criminal charges 'may carry a risk' of adverse immigration consequences.") (internal citations omitted). But *Padilla* states that mere advisement of risk is appropriate where "the law is not succinct and straightforward." 559 U.S. at 369; *see also Rodriguez-Vega*, 797 F.3d at 786. The piece of immigration law at issue here may have been technical, but careful examination of the statute would have rendered its possible implications straightforward and relatable to movant.[3] *See Padilla*, 559 U.S. at 368 ("Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute"). Moreover, there were resources available to Price that he could have availed himself. Christopher Todd, movant's current immigration attorney, testified that he has contracted with defense attorneys and conflict panels, including the Federal Defender's Office for the Eastern District of California, to advise them on issues of immigration law. And as Todd testified, had movant simply been sentenced to 364 days as to Count 10 (and a longer period as to any other Count), he would not have become an aggravated felon for purposes of subsequent removal proceedings.

Nor is the court persuaded by the government's arguments that movant should have understood the aggravated felony risk regardless of his counsel's advice, either because of the

---

[3] At the evidentiary hearing, counsel for the government emphasized that Price was not an immigration attorney. That fact is undisputed, but careful examination of the statute — performable by any attorney — would have illuminated the issue at bar.

language included in the plea bargain or because he had participated in previous immigration proceedings. The language of the plea bargain is irrelevant to the question of whether counsel was effective. *Rodriguez-Vega*, 797 F.3d at 787 ("The government's performance in including provisions in the plea agreement, and the court's performance at the plea colloquy, are simply irrelevant to the question whether counsel's performance fell below an objective standard of reasonableness."). And the court will not impute an understanding of immigration law to movant based solely on his participation in other immigration proceedings. There is no precedent for the proposition that a defendant's participation in other, similar proceedings should deprive him of the right to constitutionally effective counsel.

The government also argues that Price's performance was not deficient because he technically advocated for a sentence of less than a year by "request[ing] the United States dismiss all counts, including § 1708, with a plea to only § 1028A (carrying a 2-year minimum mandatory sentence). The offer was rejected."[4] ECF No. 126 at 11-12. And, prior to sentencing, the government notes that:

> [I]mmediately prior to the sentencing hearing, Price requested the United States and defendant enter a joint sentencing recommendation for time served plus 24 months consecutive. This offer was rejected. The United States then informed Price of its intent to recommend Figueras receive credit for his time under supervision as a further offset from the PSR low end. Thus, Price tried to obtain a less than 12-month sentence through the United States and abandoned the position before the sentencing court when Price requested 12 months plus 24 months.

*Id.* at 12. But these contentions do not address the possibility that, having been made aware of the aggravated felony concern as to Count 10, movant might, as he indicated he would in his testimony, decline to take the plea. Nor does it address Price's failure to explain at the sentencing hearing the removal consequences as to Count 10 and request of Judge England a sentence of 364 days rather than 365 days.[5]

---

[4] Figueras argues that government counsel's assertions should not be considered insofar as she did not submit them in the form of a declaration but, instead and inappropriately, as a witness in the case. ECF No. 127 at 11.

[5] As the government conceded in argument at the hearing, the goal of the prosecution was to secure an overall prison sentence that was just, not to secure the movant's deportation. That

Next, the government argues that movant cannot show prejudice based on Price's misunderstanding because movant cannot "establish he would rationally reject the extant plea agreement entirely because he would hold out for a § 1708 sentence guarantee of less than 12 months." ECF No. 126 at 11. The government emphasizes that all of movant's counts carried the risk of aggravated felony status and that "risk of loss over $10,000 was pervasive for the fraud counts and thus, the risk of aggravated felony status as a result of conviction under the extant plea agreement was fully accepted."[6] *Id.* These arguments are not persuasive. As the Ninth Circuit stated in *Rodriguez-Vega*, "[i]t is often reasonable for a non-citizen facing nearly automatic removal to turn down a plea and go to trial risking a longer prison term, rather than to plead guilty to an offense rendering her removal virtually certain." 797 F.3d at 789. Indeed, movant testified at the hearing that, had Price correctly advised him and he was unable to reach a plea bargain that ensured a sentence of less than a year on Count 10, he would have refused to plead guilty. And with respect to the risk of loss of over $10,000 dollars on any fraud count, Price has already offered his declaration that he told movant "because the total loss count on any count involving fraud was less than $10,000, conviction of those counts would not be aggravated felonies per 8 U.S.C. § 1101(a)(43)(M)(i)." ECF No. 111-1 at 3. Thus, it cannot be said that movant "accepted" the risk of an aggravated felony status by taking the plea agreement.

/////

---

goal was readily available even if Count 10 had been reduced by one day. To the extent that one day was material to achieving a just sentence, it could easily have been added to the sentence on another count.

[6] In its evidentiary hearing brief, the government also argues that there is no guarantee that Judge England would have agreed to a sentence of less than one year on Count 10. ECF No. 128 at 3-4. That may be, but movant was entitled to correct advice so that: (1) he could make an informed decision as to whether to take the plea at all; and (2) in the event he still elected to accept the plea, his counsel could request the sentence of less than a year and give him a chance to avoid an aggravated felony. Moreover, there was, at the very least, a "reasonable probability" that Judge England would have agreed to a sentence of eleven months and twenty-nine days given the profound immigration consequences a twelve-month sentence would carry. *See Strickland*, 466 U.S. at 694 (holding that a movant may demonstrate prejudice by establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

14

1       Finally, the government argues that, pursuant to the language of the plea agreement,
2  movant has waived his right to collaterally attack his conviction. ECF No. 126 at 8; ECF No. 75
3  at 8-9, ¶ 21. But claims of ineffective assistance of counsel that challenge the voluntary and
4  intelligent nature of the plea agreement are not encompassed by such waivers. *See Washington v.*
5  *Lampert*, 422 F.3d 864, 871 (9th Cir. 2005); *see also United States v. Pruitt,* 32 F.3d 431, 433
6  (9th Cir. 1994) ("We doubt that a plea agreement could waive a claim of ineffective assistance of
7  counsel based on counsel's erroneously unprofessional inducement of the defendant to plead
8  guilty or accept a particular plea bargain."); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th
9  Cir. 1993) (declining to hold that a waiver forecloses a claim of ineffective assistance or
10 involuntariness of the waiver).

11      E.      Remedy

12      At the hearing, movant's counsel stated that movant's only requested remedy was
13 resentencing. The Ninth Circuit has held that a successful section 2255 "confers upon the district
14 court broad and flexible power in its actions . . . ." *United States v. Handa*, 122 F.3d 690, 691
15 (9th Cir. 1997); *see also United States v. Jones*, 114 F.3d 897 (9th Cir. 1997) ("[T]he statute gives
16 district judges wide berth in choosing the proper scope of post-2255 proceedings."). And this
17 circuit has found resentencing to be an appropriate remedy after a successful section 2255 motion.
18 *See United States v. Hock*, 172 F.3d 676, 680-81 (9th Cir. 1999).

                                    Conclusion

20      Accordingly, it is ORDERED that the government's motion to strike (ECF No. 135) is
21 DENIED.

22      Further, it is RECOMMENDED that movant's motion to vacate, correct, or set aside his
23 sentence pursuant to 28 U.S.C. § 2255 (ECF No. 118) be GRANTED and he be resentenced as
24 the district judge deems appropriate after consideration of a properly informed sentencing
25 request/memorandum by movant.

26      These findings and recommendations are submitted to the United States District Judge
27 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days
28 after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 3, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE