UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>RALEIGH RANA FIGUERAS,<br><br>Movant. | No. 2:16-cr-00045 MCE-EFB P<br><br>**MEMORANDUM AND ORDER** |

Movant Raleigh Rana Figureras ("Movant") pled guilty pursuant to a written plea agreement to: (1) Bank Fraud and Attempted Bank Fraud in violation of 18 U.S.C. § 1344(2) (Count 4); (2) Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) (Count 9); (3) Possession of Stolen U.S. Mail in violation of 18 U.S.C. § 1708 (Count 10); and (4) Unlawful Possession of Five or More Identification Documents in violation of 18 U.S.C. § 1028(a)(3). He was sentenced to concurrent twelve (12) month terms of imprisonment on Counts 4, 10, and 11, to be served consecutively to a twenty-four (24) month term of imprisonment on Count 9, for a total term of thirty-six (36) months, all of which he has now served.

///
///

1

Presently before the Court is Movant's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 118 ("Motion"). The matter was referred to a United States Magistrate Judge pursuant to Local Rule 302(c)(21).

On November 3, 2020, the magistrate judge filed findings and recommendations, recommending to this Court that the Motion be granted and Figueras be resentenced. Findings and Recommendations ("F&R"), ECF No. 138. The United States ("the government") timely filed objections. ECF No. 153 ("Opp'n"). Because Movant's Motion is based on the theory that his plea and sentencing counsel, Jerome Price, provided constitutionally ineffective assistance of counsel ("IAC"), Mr. Price also timely objected to the F&R. ECF No. 152. Movant timely replied. ECF No. 157.

Having carefully reviewed the entire file, the Court respectfully ADOPTS in part, and REJECTS in part, the findings and recommendations of the magistrate judge.

## BACKGROUND[1]

Movant was initially charged with: (1) seven counts of bank fraud and attempted bank fraud pursuant to 18 U.S.C. § 1344 (Counts 1-7); (2) one count of aggravated identity theft pursuant to 18 U.S.C. § 1028(a)(1) (Count 9); (3) one count of possession of stolen U.S. mail pursuant to 18 U.S.C. § 1708 (Count 10); and (4) one count of unlawful possession of five or more identification documents pursuant to 18 U.S.C. § 1028(a)(3) (Count 11). ECF No. 21. He accepted a plea agreement that dropped six of the bank fraud/attempted bank fraud charges, ECF No. 75. Movant was thereafter sentenced to twelve (12) months of imprisonment on Counts 4, 10, and 11, to be served concurrently to one another, and twenty-four (24) months of imprisonment on Count 9, to be served consecutively to the three previously-enumerated Counts, for a total term of thirty-six (36) months.

---

[1] Background information is adopted with slight alteration from the Findings and Recommendations. F&R, at 2-3.

Movant is not a United States citizen and was advised, both in the plea agreement and at sentencing, that his plea could result in his removal from the country. However, as relevant here, he alleges that he was not specifically advised that if he accepted the plea agreement as to Count 10 and received a sentence of 12 months or more, that conviction would constitute an "aggravated felony" for immigration purposes as a theft offense under 8 U.S.C. § 1101(a)(43)(G). Such a conviction and sentence, according to Movant, would prevent him from asserting a number of defenses to deportation.

On November 2, 2018, while Movant was serving his prison sentence, he was contacted by immigration officials and told that he would be deported upon release because his conviction for possession of stolen mail was an aggravated felony that precluded any possible defense to removal. ECF No. 118 at 17. After being so advised, Movant prepared a section 2255 motion, purportedly with the assistance of another inmate. ECF No. 111-1 at 15 ¶ 6. Movant asserts that he signed the motion, dated it, and turned it over to that inmate for mailing. Id. The motion bears a date — November 5, 2018 — consistent with those allegations. See ECF No. 96 at 12. For reasons that are unclear, however, the Court did not receive that copy of the motion. It received only a second copy that Movant himself later placed in the prison mail system in June 2019. ECF No. 118 at 17-18. That Motion has since been amended, as well. ECF No. 118.[2]

## STANDARD OF REVIEW[3]

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this Court conducts a de novo review of this case. A federal prisoner making a collateral

---

[2] Given these facts, there is some question regarding the timeliness of Movant's Motion. Because the Court denies the Motion on the merits, it assumes without deciding that the filing was timely.

[3] This section is adopted with minimal alteration from the Findings and Recommendations. F&R at 3.

3

attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. United States v. Monreal, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. Davis v. United States, 417 U.S. 333, 344-45 (1974); United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a Movant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255 . . . ."). Relief is warranted only where a Movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346; see also United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008).

**ANALYSIS**

According to Movant, his "judgment and sentence are illegal and contravene his rights under the Fifth and Sixth Amendments to the United States Constitution." Motion at 2. Under the Sixth Amendment, Movant avers that counsel was ineffective because counsel failed to: (1) advise him of the specific immigration consequences of a guilty plea to Count 10; or (2) advocate for a sentence of less than one year on Count 10 in plea negotiations and at sentencing. Id. at 13-23. Under the Fifth Amendment, Movant asserts that his guilty plea was entered "unknowingly and involuntarily" in violation of his rights to due process because he was under the mistaken belief that he was not pleading to an offense that would constitute an aggravated felony under immigration law. Finally, Movant contends that he was denied a fair sentencing hearing because he was

1  deprived of the opportunity to argue for a sentence of less than one year on Count 10 to
2  avoid conviction of an aggravated felony. Id. at 24-28.
3  　　　　As a threshold matter, the Government argues that Movant waived his right to
4  collaterally attack his conviction when he entered his guilty plea pursuant to his plea
5  agreement. Opp'n at 8-9. This is true to the extent that Movant's plea agreement was
6  knowing and voluntary. However, such a waiver does not encompass claims of IAC that
7  are associated with the negotiation of plea agreements. See F&R at 15; see, e.g.,
8  Washington v. Lampert, 422 F.3d 864, 870-71 (9th Cir. 2005); United States v. Pruitt,
9  32 F.3d 431, 433 (9th Cir. 1994). If Movant's counsel was ineffective in advising him
10 with regards to his plea, the Court concludes that the appropriate remedy would be to
11 allow Movant to withdraw from that agreement and either attempt to renegotiate or go to
12 trial. Any potential sentencing errors at Movant's original sentencing would then become
13 irrelevant. If, on the other hand, Movant knowingly and voluntarily entered his plea
14 agreement, then the waivers to any challenge to his sentence included therein remain
15 binding. It follows that, regardless of what happened at sentencing, the only relevant
16 question is whether Plaintiff can show that his decision to plead guilty was the result of
17 counsel's unreasonable advice and that, absent such advice, it was reasonably likely
18 that he would have garnered a more favorable plea or exercised his right to be tried by a
19 jury of his peers.[4]

20 　　　　More specifically, the Sixth Amendment guarantees the accused "the right . . . to
21 have the Assistance of Counsel for [their] defence." "[T]he right to counsel is the right to
22 the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 685-86
23 (1984) (citation omitted). To establish IAC under Strickland, the defendant must prove
24 (1) "that counsel's representation fell below an objective standard of reasonableness," id.
25 ///

---

[4] To conclude otherwise would allow Movant to have his cake and eat it too, countenancing an argument that even though plea negotiations were constitutionally flawed due to IAC, the agreement should nonetheless be treated as binding because it is still beneficial to him over the option of going to trial or trying to negotiate different terms.

5

at 687-88, and (2) that any such deficiency was "prejudicial to the defense." Id. at 692; see Garza v. Idaho, 139 S. Ct. 738, 744 (2019).

In assessing the performance of counsel, judicial scrutiny "must be highly deferential." Strickland, 466 U.S. at 689; see id. ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). There exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The Supreme Court has recognized that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. For pleas, the Movant also "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). As for establishing prejudice, the Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

This Court is not convinced that Mr. Price improperly advised Movant as to the immigration consequences of his guilty pleas. Having reviewed the record in its entirety, it appears that Movant knew deportation was potentially inevitable. See, e.g., ECF No. 152-2 at 21 (Mr. Price acknowledging that the plea agreement "reflected the best deal we could get from the United States government. It was certainly eyes open that deportation removal was a possibility. And that was expressed in the plea agreement."); ECF No. 152-1 at 4 (Mr. Price: "Mr. Figueras ultimately decided to accept the plea offer realizing that the likelihood of success at trial was low and trial likely would not have changed his predicament."). Given Movant's extensive criminal history, the Government declined to dismiss the substantive charges, the bulk of which ran the risk of qualifying as aggravated felonies, either because of loss amount or time in prison. See Opp'n 10-12 (explaining that the "risk of loss over $10,000 was pervasive for the fraud counts and thus, the risk of aggravated felony status as a result of conviction under the extant plea agreement was fully accepted").

1    It would not be surprising if Mr. Price chose not to advise Movant during plea
2    negotiations in precise technical terms exactly how Count 10 might qualify as an
3    aggravated felony, especially given how unlikely it was that this Court would actually
4    impose a sentence that low. See ECF No. 152 at 4 (explaining that the Probation Officer
5    recommended a sentence of 33-41 months on Count 10).[5]  As Mr. Price points out, at
6    the time the parties were negotiating the plea, the lack of mitigation facts made the
7    potential for a downward departure of that magnitude essentially nil and Movant's
8    deportation was basically a certainty. See id. at 3-5; ECF No. 89, at 1-3 (sentencing
9    memorandum). For that reason, and because the risk of succeeding at trial was low,
10   negotiations shifted from minimizing immigration consequences to minimizing time in
11   custody. See Strickland, 466 U.S. at 689 (recognizing that "[e]ven the best criminal
12   defense attorneys would not defend a particular client in the same way"). Even Movant
13   himself tacitly concedes that the plea negotiations were constitutionally proper because
14   he does not ask to withdraw his guilty plea and seeks instead only to be resentenced on
15   Count 10. If Movant truly believed the plea was infirm, he should be seeking to withdraw
16   it entirely so that he might try to negotiate a different plea or take his chances at trial.
17   ///
18   ///
19

---

[5] In a declaration provided in objection to the F&R, Mr. Price states that while he does not recall specific conversations on the matter, his standard practice was to research each contemplated charge in the plea offer. ECF No. 152 at 3. Such investigation includes reviewing each charge — which would have included Count 10 — and seeking information as to how that charge may interact with aggravated felony provisions. Mr. Price confidently states that such research would have unsurfaced Randhawa v. Ashcroft, 298 F.3d 1148 (9th Cir. 2002), which held that a § 1708 conviction categorically qualifies as a theft offense under 8 U.S.C. § 1101(a)(43)(G). Id. at 3; see id. at 4. According to Mr. Price, in consideration of the probation guidelines on sentencing for Count Ten (33-41 months), in addition to his interactions with this Court, he would have advised Figueras that he was facing a sentence of greater than 12 months, and his "normal practice would be to convey" his understanding that this would result in an aggravated felony. Id. at 4. Mr. Price avers that the immigration consequences "would have been on [his] radar" based on Movant's concerns. Id. In support, Mr. Price states that "the reason why I fought so hard was that Mr. Figueras and I both knew that the conviction did in fact matter, as Count 10 would be an aggravated felony if he received the guideline sentence we expected him to receive at that point." Id. at 5. He concludes: "When Mr. Figueras decided to plead guilty, I distinctly remember feeling that there was nothing more we could do in plea negotiations to help his immigration situation and that Mr. Figueras would be deported. I believe Mr. Figueras pleaded guilty well aware of the risk of deportation." Id. Thus, Movant's entire IAC claim is seriously undermined by the credible account of his own plea counsel.

Of course, by opting to do neither—and electing to remain bound by the agreement—Movant has also essentially conceded that he cannot show prejudice. Indeed, there is no question now that, as things stand today, Movant has been advised as to all immigration consequences flowing from his convictions, yet he still wishes to be bound by that bargain. It is clear, then, that Movant does not wish to proceed to trial. This conclusion is further bolstered by the fact that Movant admittedly knew at the time he entered the plea that some of his other counts of conviction could qualify as aggravated felonies if the loss amount was high enough, but that knowledge was not enough to deter him from pleading guilty.[6]

Nor has Movant established that he could have garnered a more favorable plea agreement. The Government was adamant that it would not dismiss any of the substantive charges, and even after Movant had established mitigation facts for sentencing, the Government was not willing to recommend a twelve-month sentence. See Opp'n at 10-12. There is simply nothing in the record to support the theory that Movant could have done any better than he actually did.[7] Further still, Mr. Price actually

---

[6] Since the "injury" Movant identifies is really the failure to procure a less than twelve-month sentence, ECF No. 155 at 4,5, Movant is hard pressed from a practical perspective to argue that he would have gone to trial originally, given the potential drawbacks of doing so. The evidence against Movant was apparently overwhelming, so his likelihood of avoiding immigration consequences by going that route was not good. See ECF No. 152-2 at 15. Moreover, at his original sentencing, Movant benefitted from guidelines reductions for acceptance of responsibility that likely would not have been applicable if Movant were convicted after a trial. See generally ECF No. 89 (sentencing memorandum). Movant is also likely aware that if he went to trial now in an understandably desperate attempt to stay in this country, he could instead end up in the even more untenable position where he is serving a longer prison sentence than originally imposed, which of course would still be followed by his inevitable deportation. Tellingly, although Movant indicates that "[i]n the event this Court disagrees with Mr. Figueras that resentencing is the appropriate remedy in this case, and instead concludes plea withdrawal is the only appropriate remedy, Mr. Figueras respectfully asserts his intention to continue his pursuit of relief pursuant to 28 U.S.C. § 2255," Movant still does not indicate that he would elect to proceed to trial. ECF No. 155 at 6.

[7] For this reason, this case is distinguishable from Lee v. United States, where the plea agreement entailed certain deportation while the risk of removal via trial was almost certain. 137 S. Ct. 1958, 1968-69 (2017). Here, as established supra, deportation was not a certainty with the plea because the sentence on Count 10 was still unknown. Unlike in Lee, the "consequences of taking a chance at trial" here were "markedly harsher than pleading." Cf. id. at 1969. This is precisely because whether Movant's conviction qualified as an aggravated felony depended wholly on the sentence imposed, not on the fact of the conviction itself, and, as indicated, going to trial was likely to result in a longer guideline sentence for a variety of reasons. Movant's best chance of obtaining a short sentence was to accept responsibility and plead guilty. Finally, there is no assertion here that Movant's attorney wrongly informed him that there would be no deportation risk with a plea. Cf. id. at 1962-63.

8

did attempt to advocate for a sentence of less than one year for count 10, including full dismissal. See Opp'n at 11-12; ECF No. 152 at 4 ("I . . . made numerous efforts on Mr. Figueras's behalf to negotiate a plea that did not require him to plead to Count 10.").

Finally, this Court can confidently say that it would not have imposed less than a twelve-month sentence on Count 10 just so Movant could avoid immigration consequences. To claim otherwise is inconsistent with this Court's solemn recognition of its tremendous responsibility in depriving liberty from the convicted. Indeed, Movant's IAC claim is entirely reliant on the flawed assumption that this Court would grant him preferential treatment on resentencing based on his immigration status — something it declines to do. The Court already determined that a twelve-month sentence was sufficient but not greater than necessary having considered all of Movant's circumstances. To then depart downward because Movant is a non-citizen would mean that this Court was treating Movant more favorably than a similarly situated United States citizen based solely on his status. This Court does not fashion its sentences to favor individuals based on their immigration or citizenship class. Stated another way, Movant got the best sentence he could have hoped for based, in large part, on the extraordinary work Mr. Price did representing him before this Court. Given all of the foregoing, the Court simply cannot say that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 559 U.S. at 372.

///
///
///
///
///
///
///
///
///

9

In sum, as difficult as it is for Movant to face deportation now that he has turned his life around, and as sympathetic as the Court is to Movant's position, his deportation is not Mr. Price's fault. To the contrary, it is an unfortunate collateral consequence of years of Movant's poor choices catching up with him.[8]

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. The Findings and Recommendations filed November 3, 2020 (ECF No. 138) are ADOPTED in part and REJECTED in part, consistent with the foregoing.

2. The Motion to Vacate, Set Aside, or Correct Sentence, ECF No. 118, is DENIED.

3. The Clerk of Court is directed to CLOSE the companion civil case, 2:19-cv-01267-MCE-EFB.

IT IS SO ORDERED.

Dated: May 14, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[8] Movant's Fifth Amendment claim fails with his IAC claim. "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). This Court has already determined supra that Mr. Price was acting within the range of competence expected of criminal defense attorneys, and in fact minimized incarceration exposure despite a concededly formidable government case. As to Movant's understanding of consequences, it cannot be said that his guilty plea was given without knowledge of the high risk (but not certainty) of deportation, depending on this Court's sentencing. Mr. Price informed Figueras of the serious risk, and he attests that he would have informed the client of the specific deportation dangers associated with Count 10. See ECF No. 152 at 4-5. The plea agreement informed him that there were uncertain immigration consequences that could range up to "automatic removal from the United States." ECF No. 75 at 9-10. Even this Court advised Figueras of potential immigration consequences under a Rule 11 colloquy, to which he agreed. Because Movant provided his plea voluntarily and intelligently, he was not deprived of his Fifth Amendment due process rights in doing so.

10